COMMONWEALTH of Kentucky
REVENUE CABINET,
Appellant,

v.

James Richard COPE and Roy Carter
Brien, individually and as representa-
tives of a class, et al., Appellees.

No. 93–SC–056–TG.

Supreme Court of Kentucky.

Jan. 31, 1994.

Rehearing Denied May 26, 1994.

Celia M. Dunlap, Div. of Legal Services Revenue Cabinet, Frankfort, Donald L. Cox, Ilam E. Smith, Mary Janice Lintner, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, for appellants.

Douglas C. Brandon, J. Brent Austin, Lexington, James V. Marcum, Ashland, for appellees.

William P. Hanes, David T. Miller, Kentucky Retirements Systems, Frankfort, for amicus curiae, Kentucky Retirement Systems.

Thomas J. Luber, Virginia Hamilton Snell, Holliday Hopkins Thacker, Wyatt, Tarrant & Combs, Louisville, Len W. Ogden, Jr., Paducah, for amicus curiae, Tom Gossum, the Kentucky Federation of Chapters of the National Association of Retired Federal Employees, Chapter 1610, and the Council of Kentucky Chapters of the Retired Officers Association.

## OPINION OF THE COURT

The decisive issue in this case is whether governmental pensioners and private industry pensioners may be separately classified under Section 59(15) of the Constitution of Kentucky for purposes of Kentucky income taxation of their pension benefits. The trial court was unable to discover a sufficient basis for the classification and held the exemption applicable to all pension benefit recipients. The Revenue Cabinet, appellant herein, appealed from the final judgment and this Court granted transfer. CR 74.02.

This action for declaratory and injunctive relief and restitution was brought by appellees, private pensioners who claim to have been subjected to collection of an unconstitutional income tax. They claim a violation of Sections 2, 3, and, in particular, Section 59(15) of the Constitution of Kentucky by virtue of the exemption of federal, state and local government retirees from payment of income taxes on their pension benefits. The trial court agreed with appellees' contentions finding the exemption statute to be in viola-

tion of Section 59(15) of the Constitution of Kentucky. It said, "This taxation scheme takes a natural class, pensioners, and divides it for no substantial reason." The relief sought was granted.

■ Prior to reaching the classification issue, it is necessary to dispose of appellees' contention that the 1990 inclusion of federal retirees in the exempted class utterly invalidated appellant's argument with respect to a rational legislative basis for the exemption. Upon review of the legislative history of Senate Bill 4, codified as KRS 141.021, we are convinced that the sole and exclusive motivation for the inclusion of federal retirees was the decision of the Supreme Court of the United States in *Davis v. Michigan*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), which held, pursuant to 4 U.S.C. § 111, that states are not at liberty to discriminate between federal retirees and state retirees. The inclusion of federal retirees was undertaken to preserve the exemption for state and local retirees.[1]

■ The Constitution of Kentucky, Section 59(15) prohibits "local or special acts" which are "[t]o authorize or to regulate the levy, the assessment or the collection of taxes...." From the Debates of the Constitutional Convention of 1890, it is clear that the overriding purpose of Section 59 and its twenty-nine subsections was to protect the citizens of Kentucky from special interest groups, foremost among them being the railroads and corporations which had previously obtained special privileges with respect to taxation and other matters. This purpose was recognized and explained in *Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1985), *cert. denied*, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986), wherein this Court invalidated a statute of repose which protected architects and engineers from civil liability. Significantly, *Tabler* acknowledged that nothing in Section 59 prevented the General Assembly from creating separate classifications

---

1. It is a fact difficult to ignore that Kentucky pays a high price for the exemption of state retirees from payment of income tax on their pension benefits. By virtue of the inclusion of federal retirees, the tax revenue lost far exceeds the tax saving to state retirees, those whom the exemption is intended to benefit.

providing there was a reasonable basis therefor. The Court stated that:

> There must be a substantial and justifiable reason apparent from legislative history, from the statute's title, preamble or subject matter, or from some other authoritative source.

*Tabler* at 186.

A leading decision on the issue of classification is *Schoo v. Rose*, Ky., 270 S.W.2d 940 (1954), in which this Court invalidated a statute which exempted the owners of vehicles designed to carry more than nine persons from application of a statute which prohibited operation of motor vehicles upon the public highways unless the owner had paid the tax due on his property other than the motor vehicle. The Court established what has come to be known as the *"Schoo* test" for analyzing Section 59 challenges to legislation. The test established was whether the statute applied equally to all in a class, and whether there were distinctive and natural reasons inducing and supporting the classification. The Court prohibited division of a natural class into two parts and imposition of different rules upon the classes.

A recent decision on the issue here is *Waggoner v. Waggoner,* Ky., 846 S.W.2d 704 (1992), wherein we upheld a statute which exempted teachers' retirement benefits from division as marital property in an action for the dissolution of marriage. The Court forthrightly acknowledged that the statute "sets teachers up as a special class" but found the classification proper for a variety of reasons. Among the reasons identified were the non-inclusion of teachers in the Social Security system, the desirability of removing from society the responsibility of providing financial assistance to retired teachers, and the incentive it provided for teachers to enter and remain in the field of public education. The foregoing reasons were held sufficient under *Schoo* and *Tabler*

and the action of the General Assembly was found to have a reasonable basis.

Finally in the discussion of our leading decisions, reference should be made to *Delta Airlines, Inc. v. Commonwealth Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985), wherein the Court recognized the broad discretion of the General Assembly to classify taxpayers. We held that classification standards in Kentucky are the same as those under the Fourteenth Amendment to the Constitution of the United States and that economic factors may be validly considered by the Legislature in developing tax classifications.[2] Broadly, the Court stated that legislative prerogative with respect to classification could be overcome only by "the most explicit demonstration that it is hostile and oppressive against particular persons and classes." *Id.* at 18. The Court relied, *inter alia,* on *Reynolds Metal Co. v. Martin* 269 Ky. 378, 107 S.W.2d 251 (1937), a venerable decision which upheld the validity of income taxation in Kentucky and broadly confirmed the power of the General Assembly to impose taxes on income.

While the decisions discussed herein do not exhaust those which are on point, they are representative and articulate the standards which we believe to be controlling of this case. Appellees urge and we agree that the applicable standards are well stated in Justice Wintersheimer's concurring opinion in *Gillis v. Yount,* Ky., 748 S.W.2d 357, 365 (1988), as follows:

> Constitutional limitations prohibit only such classification which is not [sic] arbitrary and unreasonable and has no fair and substantial relation to the permissible governmental purpose of the legislation. The classification for taxation is a policy matter for legislative determination. Ordinarily the judgment of the legislature is to be deferred to if there is any just and reasonable basis to support such a decision. The question then becomes whether it was arbitrary and unreasonable for the legisla-

---

2. *Delta Airlines, Inc. v. Commonwealth Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985), would appear to dispose of appellees' federal constitutional claim in view of our holding that the classification standards under the Kentucky Constitution are co-extensive to those under the Fourteenth Amendment to the United States Constitution.

On the other hand, *Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1985), suggests that the Kentucky standard is more rigorous than the federal constitutional standard. Thus, under either view, appellees' federal constitutional claim, if properly before the Court, is insubstantial.

ture to create a separate classification.... (Citation omitted.)

This Court is often without benefit of a substantial legislative history as we undertake to construe statutes or test their constitutionality. In this case, however, we are not so impaired. The legislative history of Senate Bill 4 provides a remarkable insight into the factors which motivated the General Assembly in its enactment. It contains authoritative statements from the Chairman of the House Appropriations and Revenue Committee, the Senate sponsor of the legislation, and other members of the General Assembly deeply involved on both sides of the issue. Their views are entitled to considerable weight in our analysis of legislative history. *Independent Community Bakers Association of South Dakota, Inc. v. Board of Governors of Federal Revenue System*, 820 F.2d 428 (D.C.Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988).

Following the 1989 decision of the Supreme Court of the United States in *Davis v. Michigan, supra*, the Kentucky General Assembly was faced with a dilemma. To achieve compliance, it was required to choose one of three alternatives: extend the tax exemption to federal employees; extend it to all retired public and private employees; or eliminate it with respect to state and local employees. Only by one of these methods could the requirement of equal treatment for federal retirees mandated by 4 U.S.C. § 111 be accomplished. Notwithstanding spirited opposition and the acknowledged loss of needed revenue, the General Assembly elected to maintain the exemption for state and local retirees by extending the exemption to federal retirees. Its motivations were that pension exemptions in favor of state and local governmental employees encouraged their continued service despite salaries which were legislatively found to be lower than those in private enterprise. It refused to grant such an exemption to private pensioners because of the revenue which would be lost. From legislative history, there is no doubt that the available options were hotly debated and fully considered and that the final enactment was the product of the legislative process. Neither is there any doubt that a primary

motivation for continuation of the exemption was to attract and retain quality employees by granting them a tax advantage upon retirement. While the wisdom of such an approach is not indisputable, it is not arbitrary and bears a substantial relation to a permissible governmental purpose. *Gillis v. Yount*, Ky., 748 S.W.2d 357, 365 (1988), Wintersheimer, J., concurring. *See also Waggoner v. Waggoner*, Ky., 846 S.W.2d 704 (1992), which recognized the "attract and retain" doctrine as a reasonable basis for classifying retired teachers separately from other retirees. As such, we conclude that the statute is not arbitrary and without a permissible legislative purpose.

■ Despite the foregoing, appellees urge this Court to apply a more rigorous test which could, in effect, require the existence of an objective, demonstrable distinction in circumstance before classification is permissible. They argue that the Supreme Court of the United States in *Davis* rejected the "attract and retain" doctrine and imposed a requirement of "significant differences between the two classes." They quote from *Schoo* that

The classification must be based upon some reasonable and substantial difference in kind, situation or circumstance which bears a proper relation to the purpose of the statute.

*Schoo* at 941. Without holding that satisfaction of the foregoing standard is required to sustain the taxing statute at issue here, particularly in light of the presumption of validity we must accord acts of the General Assembly in matters such as this (*Revenue Cabinet v. Estate of Marshall*, Ky.App., 746 S.W.2d 408 (1988) and *Reynolds Metal Co. v. Martin*, 269 Ky. 378, 107 S.W.2d 251 (1937)), there is nevertheless a sufficient distinction between state and local employment on the one hand and private industry employment on the other hand to satisfy the more stringent test. Moreover, and inasmuch as pension benefits arise only by virtue of employment, the distinctions between public and private *employment* apply equally to public and private *pensions*. Retirees do not suddenly become fungible the day benefits commence. The nexus between employment and

entitlement to pension benefits was confirmed in *Davis v. Michigan*, 489 U.S. 803, 808, 109 S.Ct. 1500, 1504, 103 L.Ed.2d 891 (1989).

There is an undeniable difference between governmental and private employment. Foremost among the differences is profit motive. Government does not exist for the purpose of making a profit, but for rendering services to citizens which they cannot or cannot so well themselves perform or obtain. In contrast, private enterprise has as its sole or overriding purpose the return of a profit to the owners whether they be the proprietors, partners or shareholders. For the purpose of discharging its duties, government has been granted taxing power (*Reynolds Metal Co. v. Martin*, 269 Ky. 378, 107 S.W.2d 251 (1937)), a power not possessed by any private enterprise. As such, however, and by virtue of its fiduciary duty with respect to money collected from citizens through taxation, government is subjected to a great many restrictions not found in private enterprise. Among the restrictions upon government are the requirements that compensation of employees be set by legislative enactment rather than by a Board of Directors responding to market forces; and this restriction virtually eliminates the possibility of extra compensation or bonus pay for superior performance. There are no stock options.

It is an unrebutted legislative fact relied upon by the General Assembly that Kentucky state employees earn less than persons occupying comparable positions in private enterprise. The advancement of even the most able governmental employee may be limited by virtue of the existence of policy differences with the elected political leadership and those who occupy high-level policy positions are, in most cases, subject to lawful discharge upon the occurrence of differences with elected officials or a change in administration. *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Governmental employees are not generally permitted to organize and bargain collectively or engage in a strike (*Board of Trustees, etc. v. Public Employment Council*, Ky., 571 S.W.2d 616 (1978)); their right to engage in political activities is restricted (KRS 18A.140); and they are subject to civil and criminal sanctions not applicable to persons employed in private enterprise (KRS 522.010 and 42 U.S.C. § 1983).

In recognition of the foregoing somewhat negative features of governmental employment, the General Assembly has endeavored to provide certain benefits to governmental employees which may not be enjoyed by all persons working in the private sector. By virtue of the merit system, governmental employees beneath the policy level have greater job security than their counterparts in private enterprise. See KRS 18A and *Shah v. American Syn. Rubber Corp.*, Ky., 655 S.W.2d 489 (1983). Likewise, they may satisfy minimum requirements for retirement eligibility with fewer years service than is required in private industry. While "fringe benefits" given to state employees may be lesser or greater than those in private industry due to the wide disparity of benefits given, they are, nevertheless, generally regarded as being adequate. While the foregoing catalog of differences between governmental employees and employees in private industry is not comprehensive, it well illustrates the fundamental differences between them.

We recognize there may be subtle distinctions in the rules which appear to control the issue of classification. The rules set forth in *Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1985), *Schoo v. Rose*, Ky., 270 S.W.2d 940 (1954), and *Gillis v. Yount*, Ky., 748 S.W.2d 357 (1988), appear to be more stringent than those found in *Reynolds Metal Co. v. Martin*, 269 Ky. 378, 107 S.W.2d 251 (1937), *Markendorf v. Friedman*, 280 Ky. 484, 133 S.W.2d 516 (1939), *Revenue Cabinet v. Estate of Marshall*, Ky.App., 746 S.W.2d 408 (1988), *Alcohol Beverage Control Board, etc. v. Taylor Drug Stores*, Ky., 635 S.W.2d 319 (1982), and *Delta Airlines, Inc. v. Commonwealth Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985). In this case, however, whichever standard is applied is satisfied by the separate classification of state and local government retirees and private industry retirees. The General Assembly enacted the statute at issue here in

furtherance of what it determined to be a proper public purpose and it is not the prerogative of the Court of Justice to legislate to the contrary. Moreover, as demonstrated herein, there are indeed real and substantial distinctions between public and private employment sufficient to justify the classification.

 Appellees' contention that the statute violates Section 2 of the Constitution of Kentucky is without merit. Section 2 provides that "absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a republic, not even in the largest majority." This argument was answered in *Revenue Cabinet v. Estate of Marshall*, Ky.App., 746 S.W.2d 408 (1988), which recognized that classifications were not *per se* unreasonable. As we have determined that a reasonable basis exists for this classification, by definition, it may not be said to be arbitrary. *Kentucky Milk Marketing and Anti-monopoly Commission v. Borden Company*, Ky., 456 S.W.2d 831 (1970). Likewise, we find no violation of Section 3 of the Constitution of Kentucky. As the statutory classification was not improper, it represents no exemption from taxation within contemplation of Section 3. *See Commonwealth of Kentucky v. Kentucky Jockey Club*, 238 Ky. 739, 38 S.W.2d 987, 994 (1931).

The classification issue here is not new. It was ripened by the inclusion of federal retirees in 1990. Prior to that time, however, and since the early 1940's, teachers and other state government employees had been exempt from income taxation of their retirement benefits and the exemption prevailed for fifty years without substantial challenge. The mere expansion of the class to include federal retirees did not thereby invalidate this accepted classification.

For the foregoing reasons, the final judgment of the Franklin Circuit Court is reversed and appellees' claims dismissed.

All concur.